IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERT and RENEE WAAS, individuals,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>RED LEDGES LAND DEVELOPMENT, INC., a Florida corporation,<br><br>　　　　　　　Defendant. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:20-cv-00580-TC-DBP<br><br>District Judge Tena Campbell<br>Chief Magistrate Judge Dustin B. Pead |

　　　　Plaintiffs Robert and Renee Waas filed a breach of contract action against Defendant Red Ledges Land Development, Inc. in Utah state court. (Compl., ECF No. 2-2.) The Waases' chief allegation was that Red Ledges misled them when it promised that the land next to theirs would remain undeveloped. Red Ledges removed the case and then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) The Waases moved to remand the case for lack of diversity jurisdiction. (ECF No. 12.) While both parties' motions were pending,[1] the Waases filed a notice of lis pendens for nine parcels of property, (ECF No. 25), which Red Ledges promptly moved to release.[2] (ECF No. 26.) In February 2021, the court denied the Waases' motion to remand and granted Red Ledges' motion to dismiss. (Order & Mem. Decision, ECF No. 29.)

　　　　After the complaint was dismissed, Red Ledges moved for its attorneys' fees and expenses. (ECF No. 31.) The court referred this motion to Chief Magistrate Judge Dustin B. Pead. (ECF No. 36.) On November 8, 2021, Judge Pead issued a memorandum decision and

---

[1] The case was previously before the Honorable Dee Benson, but it was reassigned to this court following Judge Benson's untimely death in November 2020.

[2] The Waases have since released the lis pendens for all nine parcels. (ECF Nos. 27 & 30.)

order granting Red Ledges' motion. (ECF No. 37.) The Waases filed a timely objection to Judge Pead's decision, (ECF No. 38), and Red Ledges responded to the objection. (ECF No. 40.)

## STANDARD OF REVIEW

Magistrate judges do not typically handle postjudgment motions. An "A" referral under 28 U.S.C. § 636(b)(1)(A) applies to nondispositive pretrial matters, while a "B" referral under § 636(b)(1)(B) applies to dispositive pretrial matters, but the magistrate judge must submit "proposed findings of fact and recommendations for the disposition" to the court. Although a motion for attorneys' fees is a postjudgment matter, the court can still refer it to a magistrate judge, but it must be considered a dispositive pretrial matter. Fed. R. Civ. P. 54(d)(2)(D). This means that the court must treat Judge Pead's order as a Report & Recommendation under a "B" referral and "make a de novo determination" of the portions of the order to which the Waases object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); see also Ins. Co. of N. Am. v. Bath, 968 F.2d 20, 1992 WL 113746, at *2 (10th Cir. 1992) (unpublished table decision); cf. Colo. Bldg. & Const. Trades Council v. B.B. Andersen Constr. Co., 879 F.2d 809, 811 (10th Cir. 1989) (holding that postjudgment matters may be assigned to magistrate judges under the "inclusive provision" of 28 U.S.C. § 636(b)(3), subject to de novo review).

## ANALYSIS

The Waases make two main arguments in their objection. First, they claim that Judge Pead incorrectly applied the law by finding that Red Ledges was the "prevailing party" entitled to its attorneys' fees even though the case ended with a dismissal without prejudice. Second, they contend that even if Judge Pead correctly held that Red Ledges prevailed, the fee award was excessive. The court will consider both arguments in turn.

/ / /

### I.    Was Red Ledges the "Prevailing Party"?

Judge Pead found that Red Ledges was entitled to its attorneys' fees based on a provision in the Red Ledges Lot Purchase Agreement, a contract signed by the Waases. (ECF No. 7-3.) The court agrees. Section 12(a) of the Purchase Agreement provides for "attorneys' and other fees":

> Should either party institute any action or proceeding to enforce or interpret this Purchase Agreement or any provision hereof, for damages by reason of any alleged breach of this Purchase Agreement or of any provision hereof, or for a declaration of rights hereunder, the prevailing party in any such action or proceeding shall be entitled to receive from the other party all costs and expenses, including actual attorneys' and other fees, incurred by the prevailing party in connection with such action or proceeding. . . .

(Id. at 8.) In sum, the "prevailing party" in any action for breach of the Purchase Agreement is entitled to its attorneys' fees and expenses. Naturally, the Purchase Agreement does not define "prevailing party."

But the Purchase Agreement's fee-shifting provision is far from unique. "Prevailing party" is a term of art used throughout federal law. See Kan. Jud. Watch v. Stout, 653 F.3d 1230, 1237 n.3 (10th Cir. 2011); e.g., 42 U.S.C. § 1988(b) (in § 1983 civil-rights suits); 42 U.S.C. § 3613(c)(2) (in Fair Housing Amendments Act suits); 42 U.S.C. § 12205 (in Americans with Disabilities Act suits). The Supreme Court has sought to interpret this term consistently across statutes. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 603 n.4 (2001). In interpreting those statutes, the Court has drawn a clear line: To be a prevailing party under federal law, there must be an "alteration in the legal relationship of the parties" caused by "judicial *imprimatur*"—court action. Id. at 605.

Of course, there has been no change in the legal relationship between the Waases and Red Ledges. The case was dismissed without prejudice, and it is currently before an arbitrator. (Obj.

3

at 2, ECF No. 38.)  But Judge Pead distinguished the "judicial imprimatur" rule by confining it to the statutory context in which it arose.  This case, he wrote, involves a contract, and Utah treats contractual fee-shifting provisions contracts differently.

In Utah, "[c]ases where attorney fees may be awarded to the prevailing party based on a contractual provision fall into two categories—those where deciding the prevailing party is 'simple' and those where a 'simple analysis cannot be employed.'"  Fisher v. Davidhizar, 2021 UT App 38, ¶ 30, 491 P.3d 110, 117 (quoting Mountain States Broad. Co. v. Neale, 783 P.2d 551, 555–56 (Utah Ct. App. 1989)), cert. denied, 496 P.3d 713 (mem.).  Cases "where opposing parties obtain mixed results" fall into the latter category.  See, e.g., Neff v. Neff, 2011 UT 6, ¶ 63, 247 P.3d 380, 397.  In these cases, along with cases "involving multiple claims and parties," identifying the prevailing party is complicated.  R.T. Nielson Co. v. Cook, 2002 UT 11, ¶ 24, 40 P.3d 1119, 1126.  But in "simple" cases, the analysis is easier: When the "defendant successfully defends and avoids adverse judgment, [the] defendant has prevailed."  Id. ¶ 23, 40 P.3d at 1126 (citing Mountain States Broad. Co. v. Neale, 783 P.2d 551, 555 (Utah Ct. App. 1989)).  These victories are called "shutouts."  Fisher, 2021 UT App 38, ¶ 30, 491 P.3d at 117 (quoting Express Recovery Servs. Inc. v. Olson, 2017 UT App 71, ¶ 10, 397 P.3d 792, 795).

Applying this framework, this was a simple case—a shutout.  There were only two parties, and Red Ledges prevailed at every turn.  The Waases asserted six claims against Red Ledges, and the court dismissed all of them.  The Waases sought to remand the case, but the court denied their motion.  The Waases filed a notice of lis pendens, and Red Ledges successfully obtained a removal of the lis pendens.  Because the Waases failed to follow the mandatory alternative dispute resolution procedures, they could not sue Red Ledges in state or federal court.  The court consequently dismissed their claims.  This dismissal was without prejudice, but not

4

because the court left open the door for the Waases to file an amended complaint or refile their case in a different court. On the contrary, this case cannot be refiled in federal court—at least under these circumstances. See Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1275 (10th Cir. 2001) ("Although a dismissal without prejudice is usually not a final decision, where the dismissal finally disposes of the case so that it is not subject to further proceedings in federal court, the dismissal is final and appealable.").

The Supreme Court's recent decision in CRST Van Expedited, Inc. v. E.E.O.C., 578 U.S. 419 (2016), a case interpreting a federal fee-shifting statute, is instructive. Although the Court declined to decide whether "a defendant must obtain a preclusive judgment in order to prevail," it held that a defendant can be the prevailing party even when the court's decision does not reach the merits of the case:

> Common sense undermines the notion that a defendant cannot "prevail" unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.

Id. at 431.

Red Ledges prevailed here for a nonmerits reason. Although it only obtained a dismissal and not a full preclusive judgment, it successfully moved the court to enforce the alternative dispute resolution procedures, and it prevented the Waases from circumventing them. In other words, Red Ledges "rebuffed" the Waases' challenge and "prevent[ed]" a "material alteration in the legal relationship" between it and the Waases. Id.; see also In re Nat. Gas Royalties Qui Tam Litig., 845 F.3d 1010, 1026 (10th Cir. 2017) (holding that a dismissal for lack of subject-matter

jurisdiction could convey prevailing party status); Beach Blitz Co. v. City of Miami Beach, 13 F.4th 1289, 1300 (11th Cir. 2021) (holding that even when the district court dismissed claims without prejudice, its order granting a Rule 12(b)(6) motion carried "judicial imprimatur" and could convey prevailing party status).

In short, Red Ledges was the prevailing party here.[3]

**II.    Was the Fee Award Excessive?**

After finding that Red Ledges was entitled to its fees, Judge Pead also concluded that the hourly billing rates, hours expended, and overall fee request were reasonable. The court agrees.

A.  Hourly Rates

The Waases challenge the Hatch Law Group's hourly rates. They cite a report by legal technology company Clio, which purports to show that the average hourly rate charged for civil litigation in Utah is $237. (Obj. at 13 n.7, ECF No. 38 (citing How Much Do Lawyers Charge in Utah?, Clio, https://www.clio.com/resources/legal-trends/compare-lawyer-rates/ut/ (last visited Jan. 3, 2022).) They also cite another Clio report that shows the average hourly rate for lawyers in Utah, along with other data like realization rates. (Id. (citing Clio, Legal Trends Report 2021, at 63, https://www.clio.com/wp-content/uploads/2021/08/2021-Legal-Trends-Report-Oct-26.pdf.)) This report states that average rate for Utah lawyers is $251 per hour. Because both of Red Ledges' two attorneys charged well above $251 per hour for their services, the Waases argue that their hourly rates were excessive. Finally, the Waases attach an affidavit from their lead attorney, a shareholder at Jones Waldo, which claims that both Red Ledges attorneys charged

---

[3] This remains true even if the Waases later prevail at arbitration. By failing to follow the mandatory alternative dispute resolution procedures, the Waases forced Red Ledges to incur unnecessary fees and expenses. Why should defendants be denied their attorneys' fees in cases like this?

higher rates than comparable Jones Waldo attorneys. (Opp'n to Mot. Ex. A (Smith Decl.), ECF No. 32-1.)

These three sources are tremendously unhelpful. The first Clio report does not differentiate between various types of civil litigation, nor does it differentiate between partners and associates or between cities or even regions. Perhaps $237 per hour would be suitable in a routine civil matter in state court in Southern Utah, but the court cannot presume that $237 is appropriate in a more complex suit in federal court in Salt Lake City. The second Clio report suffers from the same flaws as the first. And the affidavit from the Waases' attorney reveals nothing about whether Red Ledges' attorneys' rates are excessive. Jones Waldo may be the oldest law firm in Salt Lake City, but that does not mean its shareholders charge market rates. Perhaps the firm's success is partially due to its more competitive rates. The court finds persuasive the affidavit attached to Red Ledges' reply memorandum, which lists the rates charged by senior partners at other prominent Salt Lake City firms. (Reply to Mot. Ex. A (Moxley Decl.), ECF No. 33-1.) These other partners charge between $600 and $795 per hour. Red Ledges' lead attorney, Brent O. Hatch, charged his discounted rate of $650 per hour, putting him within this range. Plus, Tyler V. Snow, who only charges $400 per hour, billed around 80% of the time spent on this matter. (See Mot. (Hatch Decl.) at 3, ECF No. 31-1.) Certainly $400 is well within the norm for Salt Lake City. (See Moxley Decl. ¶ 10.) The court finds that $400 and $650 are appropriate hourly rates.

B.  Hours Expended

Red Ledges' attorneys' hourly rates were reasonable, and so were their hours expended. Red Ledges provides detailed billing records, which establish that the Hatch Law Group billed 155.90 hours over eight months. The complaint was filed on July 1, 2020, in Utah state court,

and it was removed on August 12, 2020. The Hatch Law Group billed 51.4 hours up to the day the case was removed. This accounts for a third of the total time spent on the case, and much of this time included preemptively working on the motion to dismiss in the federal case. The firm billed only 37.3 hours for the rest of 2020, including full briefing on the motion to dismiss and the motion to remand. If the Waases had not filed a notice of lis pendens, the Hatch Law Group would have only billed 88.7 hours. But after the notice of lis pendens, Red Ledges wrote a demand letter and drafted a motion for removal of the lis pendens (and a reply). These actions, along with communicating with the client, totaled 60.3 hours. After the court issued its order granting the motion to dismiss, the firm billed 6.9 hours.

The Waases complain that the time spent on various filings, including the notice of removal, the motion to dismiss, and the motion to remove lis pendens, was unreasonable. The court disagrees. First, the notice of removal had to contend with the Waases' incorrect belief that Red Ledges was a citizen of Utah. Second, the motion to dismiss sought dismissal for all six claims and required interpreting the Red Ledges Lot Purchase Agreement—in other words, it was not a simple endeavor. Third, Red Ledges' need to file a motion to remove lis pendens only arose because the Waases filed a suspect notice of lis pendens, which they later voluntarily removed. The same could be said about the motion to remand. The Waases cannot claim that Red Ledges billed an unreasonable amount of time when much of it was prompted by the Waases' own filings. To top it off, the Waases did not offer their own attorneys' billing records here, so the court is left without comparable evidence of whether Red Ledges' invoices are truly unreasonable. Nor will the court "'eyeball' the fee request and cut it down by an arbitrary percentage." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

8

All in all, the court can hardly label as unreasonable 155.90 hours spent over eight months on a case with a notice of removal, motion to dismiss, motion to remand, and a fight over a notice of lis pendens. After scrutinizing each line item, the court is convinced that these amounts were reasonably incurred.

## CONCLUSION

Judge Pead correctly applied the law in this case. The court discerns no error. For that reason,

**IT IS ORDERED** that the Waases' objection (ECF No. 38) is OVERRULED.

**IT IS FURTHER ORDERED** that Judge Pead's Memorandum Decision & Order (ECF No. 37) is ADOPTED. Red Ledges is awarded $70,470.69 in fees and $1,050.69 in expenses.

**IT IS FURTHER ORDERED** that Red Ledges' motion to release lis pendens and for damages, attorney fees, and costs (ECF No. 26) is GRANTED IN PART and DENIED IN PART. The request to release lis pendens is DENIED as moot. The request for attorneys' fees and costs is GRANTED, as stated in this order.

**IT IS FURTHER ORDERED** that by January 18, 2022, Red Ledges must file a bill of costs for any fees or expenses incurred after February 27, 2021.

**IT IS FINALLY ORDERED** that the Clerk of Court close this case. A judgment will be filed concurrently with this order.

DATED this 3d day of January, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge